## DUNN *v*. UNITED STATES (No. 429).[1]

WRAPPING PAPER WITH DECORATED SURFACE.

To bring a wrapping paper with a decorated surface within the pertinent provision of paragraph 411, tariff act of 1909, it is unnecessary to show the decoration was placed on the paper by a separate and independent decorative process; the lan- guage of the statute is "whether produced in the pulp or otherwise," and it appears here the decorated effect was produced by the intentional use for that purpose of a particular kind of felt or felt blanket. It was dutiable under paragraph 411 of the act.

## United States Court of Customs Appeals, May 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 23665 (T. D. 30768).

[Affirmed.]

*Comstock & Washburn (Albert H. Washburn* of counsel) for appellants.
*D. Frank Lloyd,* Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation here is wrapping paper, returned by the appraiser as wrapping paper decorated, and assessed by the collector at 4½ cents per pound under paragraph 411 of the tariff act of August 5, 1909. The clause of the paragraph which is relied upon to sustain the assessment is as follows:

411. * * * Papers, including wrapping paper with the surface decorated or cov- ered with a design, fancy effect, pattern or character, whether produced in the pulp or otherwise, but not by lithographic process, four and one-half cents per pound; if embossed, or wholly or partly covered with metal or its solutions, or with gelatin or flock, five cents per pound and twenty per centum ad valorem. * * *

The appellants claim the paper is dutiable under paragraph 415 of the same act, the applicable part of which is as follows:

415. * * * Wrapping paper not specially provided for in this section, thirty- five per centum ad valorem. * * *

The Board of General Appraisers sustained the collector's action, relying as authority therefor upon their own decision in the Hemp- stead case, decided October 28, 1909, and reported in T. D. 30083.

The board found and counsel agree that the paper involved here is substantially like that considered in the Hempstead case.

There being no question as to the methods employed in the manu- facture of this paper, we insert here a brief description thereof as given by one of the importers' witnesses:

The pulp is first made in the beaters, mixed in the beaters, carried from there through screens, and from there to the wire of the paper machine; it is formed on this wire, goes from there to the wet felt, then carried over the driers, one drier in that case, and it is dried and finished at the same time.

[1] Reported in T. D. 31627 (20 Treas. Dec., 1078).

The paper is colored, one surface appearing to be much smoother and more highly finished or polished than the other. Each surface presents a striped or plaid pattern, design, or effect which shows more clearly upon the highly finished surface and which constitutes a decorated effect. This effect is produced by the use of a felt blanket or sheet which is the felt referred to in the foregoing description of the process of manufacture. It is the peculiar weave of this felt which produces the decorated effect upon the paper, and the felt is designed and used to produce it.

The importers contend primarily that the "design, fancy effect, pattern, or character, whether produced in the pulp or otherwise," mentioned in that part of paragraph 411 under consideration, refers to something which is the result of a separate, distinct, and secondary process, and not something that is merely incidental to the process of manufacturing the paper. In support of this contention, it is argued by appellants' counsel that that part of paragraph 435 of the tariff act of 1897, relating to "imitations of diamonds or other precious stones composed of glass or paste, not exceeding an inch in dimensions, not engraved, painted, or otherwise ornamented or decorated," has been so construed by the board and by the courts that in order to render such imitations dutiable thereunder it must appear that the ornamentation mentioned therein had been produced by a superadded process of manufacturing the imitations. We have examined the authorities referred to by counsel and they support his argument. We do not, however, think the cases are parallel. The language of the statute here explicitly in substance provides that if the surface of a paper is decorated or covered with a design, fancy effect, pattern, or character produced in the pulp or otherwise, except when produced by lithographic process, the rate of $4\frac{1}{2}$ cents per pound shall apply.

Pulp is the raw material from which the paper in this case is made, and the decorated effect produced upon its surface is the result of intentionally using in the manufacture of the paper a particular kind of felt or felt blanket which is designed to and does produce such effect.

The impression which the pulp receives from the felt, and which results in the decorated effect, is clearly comprehended in the words "whether produced in the pulp or otherwise," because this manifestly includes all the processes to which the final product, the finished paper, has been subjected before reaching its finished condition. Indeed, it is not easy to conceive how Congress could have used more apt language to include every stage of its manufacture, beginning with the pulp itself, than the words "whether produced in the pulp or otherwise." To give to these words the meaning contended for by the appellants would be in effect to read into the paragraph another exception perhaps more sweeping in its character than the one already there and which it was incumbent upon Congress to have inserted

therein if it was designed to give the paragraph the meaning contended for by the appellants.

The more natural construction, and we think the true one, is to say that by the words "whether produced in the pulp or otherwise, but not by lithographic process," Congress intended that every decorated effect, however produced, except by lithography, should render the paper presenting such effects upon its surface dutiable at the prescribed rates.

It is argued by the appellants' counsel that the rate assessed in this case is approximately 150 per cent ad valorem, and it is urged that this fact is of itself a strong argument in support of appellants' claim. It may be that giving the statute the construction which we think its unambiguous language demands will result in apparent inequality or injustice in this case, but if so, the remedy lies with Congress and not with the courts. It is further urged that, at the time the decorated effect upon the paper is thereto imparted by the felt, the substance to which it is imparted is no longer pulp but unfinished paper. We think it does not matter whether such be the fact or not. The paper is in the process of manufacture, and whether it be pulp or unfinished paper, the impression which produces the design is received and the decorated effect is "produced in the pulp or otherwise."

The importers further contend that the design or effect produced upon these papers is not upon the surface thereof but upon its body, claiming that for the purposes of the statute the surface of the paper should be regarded as separate and apart from its body. It is urged that there is a trade-understanding that the surface of the paper is imparted to it by some process independent of the processes by which the body of the paper is manufactured. In other words, speaking from a trade standpoint, that paper has no surface until one has been imparted thereto by processes designed to accomplish that result and which are in addition to the processes by which the paper itself is manufactured.

The same question was before the board in the Hempstead case. While in its decision in the case at bar the board makes no allusion to that particular subject, yet, it is inferable therefrom that the board concluded the importers had failed to establish a trade understanding. We have examined the record upon this question and so conclude; but were it otherwise, the fact nevertheless remains, that the surface of the paper involved in this case presents the effects mentioned in paragraph 411, thereby clearly distinguishing its appearance from that of plain paper.

It would seem to be an unwarranted refinement of construction, in view of the explicit language of paragraph 411 under consideration, to say that the decorated effects therein referred to are only such as are produced by independent processes upon the surface of

the paper, thereby excluding the same if and when produced before the finishing processes were applied. Such a construction would render the words "produced in the pulp" nugatory and also involve the apparently untenable position that paper has *no* surface until it is finished.

The result is the judgment of the Board of General Appraisers is *affirmed*.